UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH LUCAS,<br><br>    Plaintiff,<br><br>  v.<br><br>BLANKENSHIP CONSTRUCTION CO., DOUG BLANKENSHIP, and NATHAN MARLEN, Individually, and as Trustee of the James E. Marlen and JoAnn Marlen Declaration of Trust, Dated January 27, 2010,<br><br>    Defendants. | Case No. 23-cv-56-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for partial summary judgment filed by defendant Nathan Marlen ("Nathan") in his individual capacity (Doc. 63). Plaintiff Joseph Lucas has responded to the motion (Doc. 64), and Nathan has replied to that response (Doc. 65).

This case is a dispute among neighboring landowners and a construction company hired by one that performed work that strayed onto the other's property. The issue is whether a reasonable jury could find that Nathan could be personally liable for instructing defendant Blankenship Construction Company ("BCC"), through its owner defendant Doug Blankenship, to work on Lucas's land. Nathan disputes whether there is admissible evidence he directed the work and asks the Court for summary judgment on the claims against him in his individual capacity. He does not seek judgment on the claims against him in his capacity as the Trustee of the James E. Marlen and JoAnn Marlen Declaration of Trust, dated January 27, 2010 ("Trust"), which actually owns the property adjacent to Lucas's property on which BCC performed work. It is a close call, but there is sufficient evidence from Blankenship's deposition testimony from which a reasonable jury could find Nathan personally liable for the torts alleged in this case.

I. **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

Nathan challenges Lucas's ability to present admissible evidence that he, in his personal

capacity, directed Blankenship, the principal of BCC, to perform work on Lucas's land.  A significant issue in this motion is whether Lucas's evidence is admissible.  In ruling on a motion for summary judgment, the Court considers only evidence that would be admissible at trial, although it need not be presented at the summary judgment stage in a form that would be admissible at trial.  *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016); *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010); *see Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Inadmissible hearsay cannot be used to oppose a motion for summary judgment.  *Cairel*, 821 F.3d at 830; *Gunville*, 583 F.3d at 985.

**II.    Facts**

The admissible evidence, construed in the light most favorable to Lucas, establishes the following relevant facts.  Where admissibility is a question, the Court discusses its decision in connection with the facts for which the evidence is offered.

Lucas owns approximately 15 acres in Fayette County, Illinois.  It is wooded, and Lucas uses it primarily for hunting.  On one end of Lucas's property, there was a small, shallow drainage ditch.  Some kind of concrete structure was in the drainage ditch on Lucas's property.

Lucas's property abutted land owned by the Trust.  At that time, the Trustee was James Marlen ("Jim"), Nathan's father, and Nathan was a Trust beneficiary.  Nathan first reached out to Blankenship to see if he would be interested in performing some drainage work on the Trust's land and then farming it.  Nathan acknowledged that, as Trustee, Jim's approval was required before the arrangement could be finalized, and Nathan facilitated getting that approval by setting up a meeting between the three men.  In late 2020, the Trust leased the land to Triangle Grain, Inc. ("Triangle"), another company owned and operated by Blankenship, for farming.

In preparation for beginning farming the leased land, Blankenship met with Jim and

Nathan in the spring of 2021.  They discussed earthwork that could be done to improve the drainage on the land Triangle was going to farm.  When Blankenship recommended removal of the concrete structure in the ditch on Lucas's land, Jim said he had put the structure there years before to try to flood his property for duck hunting, but it did not work.  Blankenship was unaware at the time that the ditch and concrete structure were on Lucas's, not the Trust's, land.  Jim told Blankenship essentially, "I put it there.  If it needs to come out, take it out."  Nathan was present, but did not say anything in response.  What else happened at that meeting is a point of contention.

All parties agree, though, that in May 2021, BCC performed land-moving work to improve the drainage of the land Triangle leased from the Trust.  In addition, BCC removed the concrete structure in the drainage ditch on Lucas's property and expanded that ditch, also on Lucas's property.  It also excavated a new drainage ditch running east-west on Lucas's property.  In the process, it cut numerous trees from Lucas's property.  Blankenship was still unaware that BCC was working on Lucas's land.  The work impeded Lucas's ability to get to all parts of his property.

In April 2022, James died and Nathan became the Trustee.

**III.    Discussion**

The potential genuine issue of material fact at issue in this motion is whether there is evidence from which a reasonable jury could find Nathan directed BCC to perform work on Lucas's land.  If there is evidence BCC acted at Nathan's direction, he may be personally liable.  If there is no such evidence, he may not.  Blankenship stated in his interrogatory responses that he had never received any instructions or directives from Nathan regarding the work on Lucas's property.  He testified in his deposition along the same lines.  But Lucas argues other evidence in

the case creates a genuine issue of material fact about Nathan's involvement in the alleged trespass.

        A.        <u>Other Parts of Blankenship's Deposition Testimony</u>

Lucas first points to other parts of Blankenship's deposition testimony. When discussing the meeting between Blankenship, Jim, and Nathan, Blankenship stated regarding removal of the concrete structure, "That was agreed upon *between all three of us* that it needed to come out." (emphasis added). Mot. Summ. J. Ex. A, Blankenship Dep. 94:7-8 (Doc. 63-1). Blankenship also testified that in his conversation with Jim and Nathan, they "collectively . . . decided to enter into an agreement to do the drainage work for—in lieu of[1] some reduced rent on the cash rent of the ground." *Id.* at 71:3-14. Lucas also points to other places where Blankenship uses the word "they" to describe who approved of removing the concrete structure and drainage work. Lucas argues that these statements, in combination with the fact that the idea to do the drainage work first came from Nathan, that Nathan arranged the initial meeting between the three, that Nathan had a beneficial interest in the Trust, and that Nathan stood by silent when Jim told Blankenship to remove the concrete structure, could lead a reasonable jury to find Nathan caused the excavation on Lucas's land.

The evidence is conflicting about whether Nathan stood by doing and saying nothing or was a moving force in the agreement that called for the Blankenship Defendants to do work on Lucas's land. Even though he was not a party to the written agreement—which was between the Trust and Triangle Grain—some of Blankenship's descriptions of the meeting in his deposition provide sufficient evidence for a reasonable jury to find Nathan liable for the Blankenship Defendants' alleged torts. A defendant may be liable if he "aids, abets, assists, or directs the

---

[1] Probably should be "in exchange for" reduced cash rent.

commission of a trespass by another." *See Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).  Similarly, a defendant may be liable if he acts in concert with a tortfeasor by, for example, giving substantial assistance or encouragement to the tortfeasor to commit the tort. *See* Restatement (Second) of Torts § 876(b); *Hutchinson v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1025 (7th Cir. 2018).

There is evidence—more than a scintilla, as Nathan argues—from which a reasonable jury could find Nathan agreed that the tort should occur and encouraged the Trust and Blankenship to enter into the agreement calling for the Blankenship Defendants to commit that tort.  The parties may, of course, present their varying versions of what happened at that meeting to the jury, and if the jury believes Nathan was simply a fly on the wall who did nothing to encourage or recommend the Trust's entering into the agreement, it can find in his favor.

B.      Blankenship Defendants' Pleadings

Lucas also points to the Blankenship Defendants' Answer to the First Amended Complaint's allegation that the excavation was done at the direction of Nathan and Jim, as Trustee.  The Blankenship Defendants answered that their work was "based on their agreement with Marlen."  Blankenship Defs.' Answer to 1st Am. Compl. ¶ 20 (Doc. 55).  Similarly, the Blankenship Defendants stated in their Answer to Lucas's original Complaint that BCC had "removed the old structure which was impeding the flow of water from the Marlen Property . . . at the direction of Marlen."  Blankenship Defs.' Answer ¶ 20 (Doc. 32).[2]  Lucas argues that even though the Answer was superseded by the Answer to the First Amended Complaint, the first Answer still has evidentiary value.

Lucas next points to the Blankenship Defendant's failure to deny in their original Answer

---

[2] It is clear from the context that the Answers refer to Nathan, not Jim.

that BCC, "at Marlen's direction . . ., intentionally entered onto the Lucas Property and excavated the Original Ditch to make it substantially wider, longer, and deeper."  Compl. ¶ 14 (Doc. 1).  Pursuant to Federal Rule of Civil Procedure 8(b)(6), Lucas argues, the failure to deny must be deemed an admission as to the Blankenship Defendants.

It is true that the Blankenship Defendants' admissions in its Answer to facts in the First Amended Complaint are judicial admissions that bind those parties.  *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).  The admitted facts are essentially removed from dispute as to the answering defendants.  *Id.*; *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).  As to other defendants, though, the Answer to an operative pleading can be admissible as evidence (assuming it meets all other requirements for admission), not an uncontroverted fact.  So Lucas may be able to use the Blankenship Defendants' admissions in their Answer to the First Amended Complaint as evidence against Nathan, but Nathan is not bound by that admission and is free to counter that evidence with his own.

Similarly, an admission—either express or by failure to deny—in an answer that has been superseded by another pleading is no longer a judicial admission but instead is evidence that can be introduced.  *See Contractor Util. Sales Co. v. Certain-teed Prod. Corp.*, 638 F.2d 1061, 1084 (7th Cir. 1981) ("Although prior pleadings cease to be conclusive judicial admissions, they are admissible in a civil action as evidentiary admissions."); *see also E. Nat. Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1001-02 (7th Cir. 1997) (acknowledging prior pleading generally admissible but finding no abuse of discretion to exclude under Rule 403 as too confusing to the jury).  So again, Lucas may be able to use it against all the defendants (assuming it meets all other requirements for admission), but they may present their own contradictory evidence.

One more point merits mention.  Nathan's argument that an abandoned pleading has

7

evidentiary value at trial but not at summary judgment is unsupported by the law. Summary judgment is the time for parties to reveal the evidence they have to present at trial—the proverbial "'put up or shut up' moment in the life of a case," *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008)—so if evidence can be put into a form that is admissible at trial, it is fair game for consideration at the summary judgment stage as well. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016); *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010); *see Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). That is the entire point of summary judgment—to show what you have for trial.

        C.        <u>Blankenship's Out-of-court Statement</u>

Finally, Lucas points to Blankenship's statement to Lucas after completing the excavation that he was acting on Nathan's instructions. Nathan objects to using this statement against him because he believes it is an out-of-court statement offered for its truth and not subject to any hearsay exemption. Lucas apparently disagrees, but has only made passing reference to the basis for his disagreement in a footnote citing a case but not explaining how it applies to the situation in this case.

The Seventh Circuit succinctly describes the general hearsay rules in *Jordan v. Binns*, 712 F.3d 1123, 1126-27 (7th Cir. 2013):

> "Hearsay," in its simplest terms, is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). As a general rule, hearsay is not admissible. Fed. R. Evid. 802. But the Federal Rules of Evidence (FRE) contain numerous exceptions to the rule against hearsay. *See* Fed. R. Evid. 803, 804. Additionally, FRE 801(d) exempts or excludes from the definition of "hearsay" certain statements that otherwise would be hearsay. And "statements . . . that comprise multiple levels of potential hearsay are admissible if each part is admissible." *United States v. Green,* 258 F.3d 683, 690 (7th Cir. 2001) (citations omitted); *see* Fed. R. Evid. 805.

8

One of the exemptions from the definition of hearsay is a statement made by a party offered against that party. *See* Fed. R. Evid. 801(d)(2)(A); *Jordan*, 712 F.3d at 1128-29. Such a statement is exempt from the definition of hearsay regardless of whether it is inculpatory or against the party's interest. *Id.* at 1128. While the exemption is broad, *id.*, it does not include statements by a party offered against a party other than the one who made them. *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017) (hearsay exclusion in Rule 801(d)(2)(A) "only covers statements made by the party against whom the statements are offered"). This is true even when the party making the statements is in privity with or shares an interest with the party against whom the statement is offered. 6 Michael H. Graham, Handbook of Fed. Evid. § 801:19 (9th ed. Supp. 2023) (noting rule deliberately changes prior common law).

Lucas briefly asserts that Blankenship's statement is not hearsay because it is a command. Although Lucas cites *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017), he does not adequately develop his argument, so it is waived. Perfunctory, underdeveloped and unsupported arguments are waived. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

Lucas is also wrong. It may be true that Nathan's alleged direction to Blankenship to do work on Lucas's property is a "command" that is not hearsay because it asserts no fact. *See Baines*, 863 F.3d at 662. But Blankenship's statement that Nathan gave that command is an out of court statement offered for the truth that Nathan made such a command. Lucas has not suggested any reason that statement is not barred by the prohibition on hearsay.

For these reasons, the Court has not considered Blankenship's statement heard by Lucas in deciding this motion.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Nathan's motion for partial summary judgment (Doc. 63).

**IT IS SO ORDERED.**
**DATED: June 21, 2024**

                                                             s/ J. Phil Gilbert
                                                             **J. PHIL GILBERT**
                                                             **DISTRICT JUDGE**